## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARION ALDRICH**<br>2520 South Walter Reed Drive<br>Arlington, VA  22206<br><br>　　Plaintiff,<br><br>　　v.<br><br>**SYLVIA MATHEWS BURWELL**<br>**SECRETARY**<br>United States Department of<br>Health and Human Services<br>200 Independence Avenue SW<br>Washington, DC  20201<br><br>　　Defendant. | Case No. 1:16-cv-2200<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DAMAGES
### (Employment Discrimination)

1. Plaintiff Marion Aldrich brings this action against Defendant Sylvia Mathews Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services, for violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §633a (ADEA), and the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq*. (ADEA), as amended by the Americans with Disabilities Act of 1990, 42 U.S.C. 12111 *et seq*. (ADA).

### I. PARTIES

2. Marion Aldrich is a 57 year old citizen of the United States residing in the State of Virginia, and a qualified individual with a disability within the meaning of 29 U.S.C. § 794a and 42 U.S.C. § 12102.

3. Sylvia Mathews Burwell is Secretary of the United States Department of Health and Human Services (Department), an agency of the federal government within the meaning of 5 U.S.C. §§552a(a)(1) and 552(e).

## II.  JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 29 U.S.C. § 633a( c); and 29 U.S.C. 794a(1), which incorporates the rights, remedies and procedures of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.

5. Venue lies in this Court pursuant to 28 U.S.C. §1391, in that the unlawful acts and omissions that Aldrich alleges here took place in the District of Columbia.

6. Aldrich has exhausted her administrative remedies and is filing suit within 90 days of receiving a Final Agency Decision pursuant to 42 U.S.C. §2000e-16(c).

Upon information and belief Aldrich alleges the following:

## III.  STATEMENT OF FACTS

7. Born December 7, 1957, in Cuba, Marion Aldrich left the island with her family when she was a young girl.

8. Aldrich is fluent in four languages.  She earned a Bachelors degree in Communications from Pepperdine University in 1983, then served as a Peace Corps Volunteer in the Central African Republic, where she became fluent in one of its dialects.  Aldrich went on to earn a Masters in Public Health from the Tulane University School of Public Health and Tropical Medicine, and a Masters in Business Administration from the Tulane A.B. Freeman School of Business.

9. In 1992, Aldrich became a Public Health Adviser with the Department's Centers for Disease Control and Prevention. From that time until February 2012 – when a much younger, less experienced woman named Serina Vandegrift became her supervisor – Aldrich never earned less than a fully successful performance evaluation. Even after becoming intractably hostile towards Aldrich, Vandegrift herself was compelled to rate Aldrich's job performance as "fully successful" two years running.

10. In February 2012, Vandegrift became Director of two small sections – the Executive Secretariat and Office of Legislative Affairs – in the office of the Chief Operating Officer for the Office of the Assistant Secretary for Preparedness and Response (ASPR).

11. Aldrich was then working in the Executive Secretariat as a Policy Analyst. Very shortly after becoming Director of the Executive Secretariat and Office of Legislative Affairs, Vandegrift began subjecting the older and more experienced Aldrich to rude, hostile and otherwise demeaning treatment.

12. In her long career in government, Aldrich had never complained about abusive treatment in the workplace. Yet within months of working under Vandegrift, Aldrich was compelled to complain about abusive and discriminatory conduct: In July 2012, she initiated an informal EEO complaint challenging a pattern of rude and demeaning treatment on an almost daily basis motivated by unlawful considerations including age.

13. In August 2012, Aldrich also sought accommodation for disability – she had long been under treatment for Attention Deficit Disorder – including a quiet work space that would better enable her to concentrate on assignments that were coming from Vandegrift with increasingly unreasonable requirements and deadlines.

14. A colleague in the Executive Secretariat named Susie Nunez agreed to change offices with Aldrich in order to afford her a quieter work space.

15. Nunez has furnished a sworn statement to the Department reporting that Vandegrift later told her she was disappointed that Nunez agreed to switch offices with Aldrich.

16. Nunez also reported that she heard Vandegrift calling Aldrich "unstable and crazy."

17. Nunez reported that Vandegrift "picked on" Aldrich, once telling Nunez that she was thinking about hanging several large bullhorns – which she kept in her office – "right above the door so [they] can swing and hit people like Ms. Aldrich."

18. It was thus clear to Nunez and others in the Executive Secretariat and Office of Legislative Affairs that Vandegrift harbored a deep–seated personal animus against Aldrich, a veteran of many years' experience who had experienced only success in the federal service before encountering Vandegrift.

19. The accommodation of a quiet work space made possible by Suzie Nunez' willingness to trade offices proved temporary:  Following a move to another building that took place in June 2013, Vandegrift assigned Aldrich to a noisy cubicle directly across from her own office, where she could closely monitor Aldrich and her movements.  Nunez has reported to the Department that Vandegrift told her at the time that Aldrich would simply "have to deal with the noise level." Aldrich remains assigned to this noisy cubicle across from Vandegrift's office.

20. Aldrich abandoned the EEO claims filed in July 2012 at the informal complaint stage, hoping the experience of being called out for abusive and discriminatory conduct might have a chastening effect on Vandegrift going forward.

21. Vandegrift's more abusive conduct did abate for a time. The daily criticism lessened, and Aldrich's actual job performance in 2012 was such that Vandegrift was compelled to rate it fully successful. Vandegrift did mention allegedly late submission of work product in her narrative comments, but rated Ms. Aldrich as fully successful in "Professional/Customer Service." This performance standard included the following requirements: "Readily adjusts priorities to respond to pressing and changing demands. Honors commitments and agreed upon deadlines."

22. Aldrich's actual job performance during 2013 also compelled Vandegrift to afford her a fully successful performance evaluation. Vandegrift again mentioned allegedly late submissions in her narrative comments, but was again compelled by the actual record of performance to rate Ms. Aldrich fully successful in "Professional/Customer Service." The standard now included the specific requirement that "[a]s a measurable, deadlines will be met ninety (90%) of the time."

23. Aldrich met this 90% on–time standard during 2013 despite being denied accommodation for her disability following the move to another building in June 2013, including quiet work space, and a schedule permitting her to work after normal working hours, also in order to minimize distractions.

24. When Aldrich abandoned informal claims of discrimination brought in July 2012, she hoped it might help bring a fundamental and permanent change in working conditions.

25. However, perhaps emboldened by passage of time following Aldrich's decision to abandon her EEO claims, and because she continued to resent Aldrich's greater age and experience, and her disability and continuing requests for accommodation, Vandegrift

renewed the campaign of outright rude, hostile and demeaning treatment, within just three months of rating Aldrich's performance for 2013 as fully successful.

26. In May 2014, Ms. Vandegrift gave Ms. Aldrich a reprimand, for "unacceptable work performance, failure to follow instructions and failure to submit leave that accurately reflects time away from the office."

27. Apparently forgetting that in consecutive performance evaluations covering the period March 1, 2012 through December 31, 2013, she had rated Ms. Aldrich's actual job performance as fully successful, Ms. Vandegrift alleged in part that "[y]ou have been consistently counseled on these issues since May 2012, throughout 2013 until the present day. In May of 2012, I met with you at least once a week to improve your behavior, to no avail."

28. The official record of Aldrich's actual performance during this period shows that neither performance nor behavior warranted any counseling. If Vandegrift was demanding to meet with Aldrich on a weekly basis, it was not for any legitimate purpose, but to harass and demean her, to undermine her faith in herself and in her work, and ultimately to drive her from government service.

29. Vandegrift's harassing and demeaning conduct exacted a tremendous and continuing emotional and physical toll. In June 2014, Aldrich was compelled to take fourteen days of leave under the Family Medical Leave Act for outpatient mental health care.

30. With the assistance of her union, Aldrich also challenged the reprimand imposed by Vandegrift, squarely alleging that Vandegrift was motivated, not by any good faith

concerns about performance or behavior, but by Aldrich's age and disability, and by her persistent efforts to obtain the reasonable accommodation for her disability.

31. Vandegrift's compliant superiors rubber-stamped the reprimand.

32. Aldrich did not challenge the reprimand as discriminatory and retaliatory through the Department's EEO process because it did not entail a loss of salary or benefits. She understood that a legal challenge was difficult in the absence of such tangible material effects.

33. However, a five-day suspension prompted by Vandegrift and imposed in October 2014 – for equally bogus performance and behavioral "reasons" – did entail a loss of salary and benefits.

34. Aldrich therefore brought an informal EEO complaint to challenge the suspension as part of a pattern of abusive and discriminatory treatment based upon (1) age and disability, (2) repeated requests for reasonable accommodation, and (3) Vandegrift's determination to punish her for the exercise of rights protected by law against retaliation, including the right to challenge discrimination based on age and disability, and the right to challenge a federal employer's failure to afford reasonable accommodation for a disability.

35. On Thursday, October 30, 2014, the Department's EEO Office forwarded Vandegrift a document titled "Responsible Management Official Notification of Pre-Complaint" (Notification), asking that Vandegrift return a signed acknowledgment of receipt. The RMO Notification specifically warned against any retaliatory conduct.

36. Ms. Vandegrift responded by email the next day, Friday, October 31, 2014, acknowledging receipt of the Notification, but indicating she would not be returning a signed version to the EEO Office until the following work day, Monday, November 3rd.

37. On Monday, November 3, 2014 – the very day Vandegrift was to return the RMO Notification to the EEO Office – Vandegrift also took the opportunity to give Aldrich a memorandum headed "Leave Restriction."

38. Aldrich was a 24-year veteran of the Federal service with no record of alleged leave abuse until after she challenged discriminatory treatment and sought reasonable accommodation for a disability.

39. Yet Vandegrift required, among many other things, that for the next six-month period Aldrich was to announce any arrival, as well as each and every departure during the day that might take 15 minutes or more.

40. This "Leave Restriction" – which was to have lasted six months – has continued to the present. It has been the instrument Ms. Vandegrift has used to exact an emotional and physical toll on a daily basis – it has had its desired effect as stress and associated symptoms, including sleep deprivation and fatigue, continue to mount – and ideally to drive Aldrich from the Federal service, all in order to punish her for challenging discriminatory and retaliatory treatment and seeking – and complaining about being denied – reasonable accommodation for a disability well-documented by her treating physician.

41. On February 5, 2015, Aldrich filed a formal EEO complaint alleging the claims asserted in her informal complaint. More than 180 days elapsed without the Department taking

final action.  In October 2015, Aldrich filed suit in the U.S. Court for the District of Columbia:  *Aldrich v. Burwell,* Case No. 1:15-cv-01662-JEB.

42. After Aldrich's informal EEO complaint of February 5, 2015, Vandegrift continued to engage in a persistent pattern of abusive conduct against Aldrich.

43. In April 2015, Vandegrift also proposed that Aldrich be suspended again, this time for allegedly failing to adhere to prescribed leave policy on a day a blizzard was underway in Washington, D.C.:  Vandegrift herself was on the West Coast at the time.  Vandegrift also alleged that Aldrich failed to arrange for coverage during periods of leave, without mentioning a single instance of a project or deadline compromised during Aldrich's absence.

44. In June 2015, compliant superiors again rubber-stamped Vandegrift's proposed discipline for Aldrich, imposing a suspension of ten days rather than the fourteen days proposed.

45. Aldrich brought an informal EEO complaint challenging this additional suspension as discriminatory based on age and disability, and retaliatory for having engaged in protected activity and requested reasonable accommodation.

46. The Department designated a contract EEO Counselor to interview Aldrich and Departmental officials preliminary to any formal EEO complaint.  Aldrich obtained administrative leave for a two-hour period on September 9, 2015, in order to participate with her attorney in a conference call with the EEO Counselor scheduled to take place that morning.

47.  During the very time Vandegrift must have known a conversation with an EEO Counselor would likely be underway, she emailed Aldrich to accuse her of failing to

arrange for coverage during these two hours of approved administrative leave, and for failing the day before to arrange for the "out-of-office reply" function to appear for email purposes during this same two hour period.

48. In August 2016, the Department rendered a Final Agency Decision rejecting claims asserted in the EEO complaint challenging the suspension imposed in June 2015.

### III. CLAIMS

#### A. FIRST CAUSE OF ACTION
#### Age Discrimination – Retaliation

49. Aldrich adopts and incorporates by reference paragraphs 1 to 48.

50. The Department subjected Aldrich to a ten–day suspension imposed in order to retaliate against and punish her for objecting to discriminatory treatment because of age, in violation of the ADEA.

51. Aldrich has suffered retaliation, economic injury, and mental distress as a direct and proximate result of the aforesaid conduct.

#### B. SECOND CAUSE OF ACTION
#### Disability Discrimination - Retaliation

52. Aldrich adopts and incorporates by reference paragraphs 1 to 51.

53. The Department subjected Aldrich to a ten–day suspension in order to retaliate against and punish her for seeking reasonable accommodation for disability, and for objecting to being denied reasonable accommodation, and for objecting to other discriminatory treatment because of disability, in violation of the Rehabilitation Act..

53. Aldrich has suffered retaliation, economic injury, and mental distress as a direct and proximate result of the aforesaid conduct.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Marion Aldrich requests judgment against Sylvia Matthews Burwell, Secretary of the United States Department of Health and Human Services, as follows:

A. Compensatory damages in an amount to be determined at trial.

B. Back pay and attendant benefits in amounts to be determined at trial.

C. Reasonable attorneys' fees and costs.

D. Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff Marion Aldrich demands a jury to determine all issues so triable.

Respectfully submitted,

November 3, 2016                **KLIMASKI & ASSOCIATES, P.C.**

 */s/  James R. Klimaski*
James R. Klimaski, #243543

 */s/  John P. Racin*
John P. Racin, #942003

Klimaski & Associates, P.C.
1717 N Street NW – Suite 2
Washington, DC  20036-2827
202-296-5600         Fax 202-296-5601
Klimaski@Klimaskilaw.com
Racin@Klimaskilaw.com

**Attorneys for Marion Aldrich**